IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IVAN OCON,<br>　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§ | EP-21-CV-283-DB |

## ORDER DENYING RESPONDENT'S MOTION TO DISMISS
## AND GRANTING PETITIONER'S PETITION FOR A WRIT OF AUDITA QUERELA
## OR A WRIT OF CORAM NOBIS

The United States of America (the Government) moves to dismiss Ivan Ocon's petition for a writ of audita querela or a writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651. Mot. to Vacate, ECF No. 5. The Government's motion is denied—and Ocon's petition is granted—for the following reasons.

### BACKGROUND AND PROCEDURAL HISTORY

On May 3, 2006, Ocon, a Mexican national, agreed to sell Rene Holguin 100 pounds of marijuana for approximately $25,000. United States v. Ocon, EP-06-CR-1078-DB-2 (W.D. Tex.), Plea Agreement 11–12, ECF No 212. Ocon did not understand when he entered into the agreement that Holguin had no intention of paying for the marijuana. Id. at 12.

On May 4, 2006, Ocon and several associates went to a home in El Paso, Texas, to deliver the marijuana. Id. at 13. When they realized Holguin was stealing the marijuana, they kidnapped the homeowner's teenage son, took him to Juarez, Mexico, and held him for ransom. Id. at 14. Ocon "brandished a handgun" during the kidnapping. Id.

After several days of negotiations, Holguin agreed to pay $17,000 for the victim's return. Id. Before Holguin made the payment, Mexican Police discovered the victim waiting at the Paso del Norte International Bridge between the United States and Mexico at El Paso. Id.

Ocon was charged in a second superseding indictment with conspiracy to kidnap, in

violation of 18 U.S.C. §§ 120l(a)(l), (c), and (g) (Count One); kidnapping and aiding and abetting a kidnapping in violation of 18 U.S.C. §§ 1201(a)(1), and (g), and 18 U.S.C. § 2 (Count Two); using, carrying and brandishing a firearm during and in relation to, and possessing and brandishing a firearm in furtherance of a crime of violence, namely kidnapping, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), and (ii) (Count Four); interstate communications demanding ransom, in violation of 18 U.S.C. § 875(a) (Count Six); conspiracy to possess with the intent to distribute a quantity of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count Eight); and possession with the intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Nine). Id., Second Superseding Indictment, ECF No. 272.

Ocon negotiated a plea agreement with a binding sentence pursuant Federal Rule of Criminal Procedure11(c)(1)(C) because he "agreed to provide 'substantial assistance' to law enforcement officers in their investigative efforts."[1] Id., Plea Agreement 1, 2, 4, ECF No 212. Under its terms, Ocon agreed to plead guilty to Counts Two and Four of the superseding indictment. Id. at 1. In exchange, he obtained the Government's agreement that he should be sentenced to 120 months' imprisonment and promise to move to dismiss the remaining counts pending against him. Id. at 1.

At Ocon's sentencing, the Court determined his advisory guideline range for Count Two was 262 to 327 months' imprisonment and Count Four carried "an 84-month mandatory consecutive sentence." Id., Sentencing Tr. 3:2–3:6, ECF No. 391. But it granted the Government's motion for a departure and sentenced Ocon to an aggregate term of 120 months'

---

[1] See Freeman v. United States, 564 U.S. 522, 527 (2011), holding modified by Hughes v. United States, 138 S. Ct. 1765 (2018) ("Rule 11(c)(1)(C) ... permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, ... [a request which] binds the court once the court accepts the plea agreement.").

2

imprisonment pursuant to the terms of the binding plea agreement. J. Crim. Case 2, ECF No. 318.

"Upon completing his sentence, Mr. Ocon was placed in removal proceedings and deported to Mexico on February 1, 2016." Pet'r's Pet. 6. "He was released from supervised release on April 22, 2019." Mot. to Dismiss 1, ECF No. 5.

Ocon's believed his prior military service in Operation Iraqi Freedom made him eligible for military naturalization. Pet'r's Resp. 5, ECF No. 12 (citing 8 U.S.C. § 1440(a)). He applied in 2015, but his application was denied because his § 924(c) "aggravated felony" conviction made him "permanently ineligible for naturalization." Id. (citing Ex. B, U.S. Citizenship and Immigration Services Decision (CISD)).

Ocon applied for military naturalization again in September 2021. Pet'r's Pet. 2, ECF No. 1. He recognized when he applied the second time that a conviction for a "crime of violence" permanently barred him from naturalization. Id. But he understood the Supreme Court had determined—after he discharged his sentences—that federal kidnapping under 18 U.S.C. § 1201 did not qualify as a crime of violence. Id. at 7 (citing Sessions v. Dimaya, 138 S. Ct. 1204, 1223 (2018); United States v. Davis, 139 S. Ct. 2319, 2324 (2019)). Thus, he concluded his conviction for using, carrying, and brandishing a firearm in furtherance of a crime of violence, namely kidnapping, in violation of 18 U.S.C. § 924, was no longer valid. Id. at 8 (citing United States v. Dixon, 799 F. App'x 308, 309 (5th Cir. 2020) (granting a motion to file a successive motion under 28 U.S.C. § 2255 to determine "whether kidnapping qualifies as a crime of violence post-Davis")). Consequently, he decided to ask the Court to vacate his conviction for brandishing a firearm in furtherance of a crime of violence (Count Four) through a petition for a writ of audita querela or a writ of coram nobis—with a view toward his eventual naturalization. Id. at 9.

The Government now moves to dismiss. Mot. to Dismiss, ECF No. 5. It asserts Ocon "has failed to state a sound reason for his failure to seek relief earlier, he is barred by the doctrine of laches, and he has not shown a continuing civil disability because of his conviction." Id. at 1.

Ocon responds he "moved with diligence" to file his petition in the wake of the Fifth Circuit's decision in United States v. Carreon, 803 F. App'x 790 (5th Cir. 2020), as revised (May 8, 2020). Pet'r's Resp. 2, ECF No. 12. He claims he "overcame extraordinary financial and logistical obstacles to file his petition only sixteen months after the Fifth Circuit addressed the applicability of Davis to kidnapping convictions as predicates for 18 U.S.C. § 924(c), and only twenty-eight months after the Supreme Court entered judgment in Davis." Id. at 12. He provides evidence the Department of Veterans Affairs granted him a 100 percent service-connected disability rating based on a major depressive disorder, chronic fatigue syndrome, lumbosacral strain, right ankle lateral collateral ligament sprain, left waist strain, left index finger strain, left upper extremity carpal tunnel syndrome, right lower extremity radiculopathy, and left lower extremity radiculopathy. Id. at Ex. A. He complains "he cannot seek relief through 28 U.S.C. § 2255 because he is not in custody—and he has well explained his minimal delay." Id. at 12. He contends "[h]is civil disabilities stem from the ongoing immigration consequences he faces as a result of his Section 924(c) conviction." Id. at 17.

The Government replies "ignorance of the law and the petitioner's pro se status are not valid reasons for delay in filing a petition." Gov't's Reply 5, ECF No. 15 (citing Fischer v. Johnston, 174 F.3d 710, 714 (5th Cir. 1999)). It observes "[i]n the context of analyzing whether petitioner's successive § 2255 motion was abuse of the procedure . . ., the Court found that the petitioner's pro se status, illiteracy, deafness, and lack of legal training were not external factors that justify the failure to raise the claim in the previous motion." Id. at 5–6 (citing United States

4

v. Flores, 981 F.2d 231, 236 (5th Cir. 1993). It notes "the Ninth Circuit found that the petitioner's delay in filing a petition for a writ of error coram nobis was not sound reason based on her incarceration, deportation to Austria, diminished capacity, or the time it took her 'to find competent counsel willing to review her case and pursue her legal remedies.'" Id. at 6 (quoting United States v. Riedl, 496 F.3d 1003, 1006–08 (9th Cir. 2007)).

## APPLICABLE LAW

The All Writs Act grants a district court the authority to issue extraordinary writs in aid of its jurisdiction. 28 U.S.C. § 1651. But it "does not confer an independent basis for subject-matter jurisdiction." Renteria-Gonzalez v. INS, 322 F.3d 804, 811 (5th Cir. 2002) (citing United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977). It "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Pennsylvania Bureau of Correction v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985).

The writ of audita querela is an ancient common-law remedy which permits "a judgment defendant to obtain relief against the consequences of the judgment on the ground that some defense or discharge has arisen since its rendition that could not be taken advantage of otherwise." United States v. Miller, 599 F.3d 484, 487 (5th Cir. 2010) (citing United States v. Reyes, 945 F.2d 862, 863 n.1 (5th Cir. 1991); Black's Law Dictionary 150 (9th ed. 2009)). It "is directed against the enforcement, or further enforcement, of a judgment which, when rendered, was just and unimpeachable." Id. (citing 7A C.J.S. Audita Querela § 4 (2004)). It "is only available where the legal objection raised cannot be brought pursuant to any other post-conviction remedy." Id. at 488 (citing Reyes, 945 F.2d at 866). It "allows relief . . . only where a

5

gap exists in the system of federal post-conviction remedies." Id. (citing United States v. Ayala, 894 F.2d 425, 428 (D.C. Cir. 1990)).

Federal Rule of Civil Procedure 60(b) expressly abolished the use of the writ of audita querela to attack a civil judgment. Id. (citing Reyes, 945 F.2d at 865). "However, the reasoning of the Supreme Court's opinion in United States v. Morgan, 346 U.S. 502, 74 S. Ct. 247, 98 L. Ed. 248 (1954), may allow the writ to be used to attack a criminal judgment." Id. If the writ of audita querela survives, it "is not available to vacate an otherwise final criminal conviction on purely equitable grounds." Reyes, 945 F.2d at 866–67 (emphasis added).

"The writ of coram nobis is also an ancient common-law remedy designed 'to correct errors of fact.'" United States v. Denedo, 556 U.S. 904, 910 (2009) (quoting Morgan, 346 U.S. at 507). It provides "an 'extraordinary remedy'. . . to a petitioner no longer in custody who seeks to vacate his conviction in circumstances where 'the petitioner can demonstrate that he is suffering civil disabilities as a consequence of the criminal convictions and that the challenged error is of sufficient magnitude to justify the extraordinary relief.'" United States v. Castro, 26 F.3d 557, 559 (5th Cir. 1994) (citing Morgan, 346 U.S. at 511, and United States v. Marcello, 876 F.2d 1147, 1154 (5th Cir. 1989)). "The writ is the 'criminal-law equivalent' of a 'Hail Mary pass.'" Hinkson v. United States, No. 21-40174, 2022 WL 686325, at *2 (5th Cir. Mar. 8, 2022) (quoting United States v. George, 676 F.3d 249, 251 (1st Cir. 2012)). "'[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis ] would be necessary or appropriate.'" Carlisle v. United States, 517 U.S. 416, 429 (1996) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)). It "will issue only when no other remedy is available and when 'sound reasons exist[ ] for failure to seek appropriate earlier relief.'" United

States v. Dyer, 136 F.3d 417, 422 (5th Cir. 1998) (quoting Morgan, 346 U.S. at 512 (alteration in original)).

According to the four-part test announced in Foont v. United States, 93 F.3d 76 (2nd Cir. 1996), a petitioner seeking coram nobis relief must demonstrate he (1) is no longer in custody; (2) has circumstances which compel granting the writ to achieve justice; (3) has sound reasons for his failure to seek appropriate earlier relief, and (4) continues to suffer legal consequences from his conviction which may be remedied by granting the writ. Foont, 93 F.3d at 78–79. "In addition, a petitioner bears the considerable burden of overcoming the presumption that previous judicial proceedings were correct." Dyer, 136 F.3d at 422 (citation omitted).

In sum, the writ of audita querela is used to challenge a judgment that was correct at the time it was rendered but which is made infirm by matters that arose after its rendition—while the writ of coram nobis attacks a judgment that was infirm at the time it was rendered for reasons that later came to light. Miller, 599 F.3d at 487. Both the writ of audita querela and writ of coram nobis are extraordinary remedies available "only under circumstances compelling such action to achieve justice" and to correct "errors of the most fundamental character." Okonkwo v. United States, No. 20-13104, 2021 WL 3732994, at *4 (11th Cir. Aug. 24, 2021), cert. denied, 142 S. Ct. 911 (2022) (quoting Morgan, 346 U.S. at 511–12).

## ANALYSIS

Ocon maintains a federal kidnapping conviction under 18 U.S.C. § 1201 no longer qualifies as a crime of violence. Pet'r's Pet. 7, ECF No. 1 (citing Dimaya, 138 S. Ct. at 1223; Davis, 139 S. Ct. at 2324). Hence, he concludes his conviction for brandishing a firearm in furtherance of a crime of violence—specifically federal kidnapping—in violation of 18 U.S.C. §

924 is no longer valid. Id. at 8 (citing Dixon, 799 F. App'x at 309). He asks the Court to vacate his conviction on Count Four through a petition for a writ of audita querela or a writ of coram nobis—with a view toward his eventual naturalization. Id. at 9.

The Fifth Circuit explains there are two ways for the Government to establish a crime of violence under 18 U.S.C. § 924(c)(3):

> A "crime of violence" includes any felony that either (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (commonly known as the "elements" clause), or (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (commonly known as the "residual" clause).

In re Hall, 979 F.3d 339, 342 (5th Cir. 2020).

In Dimaya, the Supreme Court held that the definition of crime of violence in the residual clause of 18 U.S.C. § 16—which relies on the same definition of "crime of violence" used in 18 U.S.C. § 924(c)(3)—was unconstitutionally vague and violated the Due Process Clause of the Fifth Amendment. Dimaya, 138 S. Ct. at 1210, 1215–16. In Davis, the Supreme Court invalidated the residual clause in 18 U.S.C. § 924(c)(3) as unconstitutionally vague. Davis, 139 S. Ct. at 2324.

The Fifth Circuit subsequently held "Davis announced a new rule of constitutional law retroactively applicable on a first habeas petition." United States v. Reece, 938 F.3d 630, 635 (5th Cir. 2019). It then applied the ruling in Davis to vacate a § 924(c) conviction predicated on federal kidnapping. United States v. Carreon, 803 F. App'x 790, 791 (5th Cir. 2020) (per curiam).

Ocon claims—and the Government does not dispute—he is no longer in custody, and he has articulated circumstances which may compel the Court to grant a writ of coram nobis to

achieve justice. Pet'r's Resp. 9, ECF No. 12. Consequently, he meets the first and second prongs of the Foont test. Foont, 93 F.3d at 78–79.

### A. Sound Reasons for Delay

The Government contends Ocon "has failed to state a sound reason for his failure to seek relief earlier." Mot. to Dismiss 1, ECF No. 5. It maintains "the petitioner's pro se status . . . and lack of legal training" did not justify his delay. Gov't's Reply 5–6, ECF No. 15. Id. at 5–6 (citing Flores, 981 F.2d at 236). It observes "incarceration, deportation . . ., diminished capacity, or the time it took [him] 'to find competent counsel willing to review [his] case and pursue [his] legal remedies" were not sound reasons for delaying his petition. Id. (quoting Riedl, 496 F.3d 1006–08).

"It has long been recognized that a petitioner seeking coram nobis must exercise 'reasonable diligence' in seeking prompt relief." Dyer, 136 F.3d at 427. But "[b]ecause there is no applicable statute of limitations for a writ coram nobis, a district court considering the timeliness of a petition 'must decide the issue in light of the circumstances of the individual case.'" Chico v. United States, 703 F. App'x 292, 294 (5th Cir. 2017) (quoting Foont, 93 F.3d at 79).

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001) (citing United States v. Frady, 456 U.S. 152, 164 (1982)). Still, a defendant may collaterally attack a sentence pursuant to 28 U.S.C. § 2255. Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000). And—in extraordinary circumstances—a

9

defendant may obtain relief through a writ of audita querela or a writ of coram nobis.[2] Miller, 599 F.3d at 487; Denedo, 556 U.S. at 910.

"Because of the similarities between coram nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases." Hinkson, 2022 WL 686325, at *2 (quoting Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996)); see also Puente v. United States, 676 F.2d 141 (5th Cir.1982) ("Because [defendant] has completed his sentence, relief is unavailable under 28 U.S.C. § 2255.").

A defendant must generally bring a § 2255 motion for collateral review within one year from the date on which (1) the judgment became final; (2) the government-created impediment to filing the motion was removed; (3) the United States Supreme Court initially recognized, and made retroactively applicable to cases on collateral review, the legal predicate for the motion; or (4) the petitioner could have discovered, through due diligence, the factual predicate for the motion. 28 U.S.C. § 2255(f). Still, a defendant "is entitled to equitable tolling . . . if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted).

On June 24, 2019, the Supreme Court initially recognized in Davis that the residual clause in 18 U.S.C. § 924(c)(3) was unconstitutionally vague. Davis, 139 S. Ct. at 2324. But "at

---

[2] But see Nelson v. Reese, 214 F. App'x 465, 467 (5th Cir. 2007) ("Because § 2255 provides the primary means of collaterally attacking a federal conviction and sentence, . . . the All Writs Act is not applicable to Nelson's petition.") (citing Reyes-Requena v. United States, 243 F.3d 893, 901 (5th Cir. 2001)).

least four Justices of the Supreme Court . . . made clear that rulings such as <u>Davis</u> are not automatically retroactive, and thus must be made retroactive by the Supreme Court in a future case to comply with provisions such as 28 U.S.C. § 2255(h)(2)." <u>In re Hall</u>, 979 F.3d at 342. Indeed, Justice Kavanaugh stated in his dissent, "who knows whether the ruling will be retroactive? Courts will be inundated with collateral-review petitions from some of the most dangerous federal offenders in America." <u>Davis</u>, 139 S. Ct. at 2354 (Kavanaugh, J., dissenting).

Nevertheless, the Fifth Circuit held on September 9, 2019, that "<u>Davis</u> announced a new rule of constitutional law retroactively applicable on a first habeas petition." <u>Reece</u>, 938 F.3d at 635. And on May 6, 2020, it applied the ruling in <u>Davis</u> to vacate an 18 U.S.C. § 924(c) conviction predicated on federal kidnapping. <u>Carreon</u>, 803 F. App'x at 791.

The Government does not dispute Ocon's § 924(c) conviction is no longer valid under the Supreme Court's rulings in <u>Dimaya</u> and <u>Davis</u>—or the Fifth Circuit's application of <u>Dimaya</u> and <u>Davis</u> to a § 924(c) conviction in <u>Carreon</u>.

Moreover, Ocon began actively pursuing a military naturalization based on his Army service in Operation Iraqi Freedom in 2015. Pet'r's Resp. 5, ECF No. 12. He observed it was not until May 2020 that the Fifth Circuit clarified in <u>Carreon</u> that kidnapping was not a crime of violence under § 924(c). <u>Id.</u> at 1. He asserted he "moved with diligence to file this petition in the wake of the Fifth Circuit's decision in <u>Carreon</u>." <u>Id.</u> at 2. He explained his delay was due to the "extraordinary financial and logistical obstacles to file his petition" as a disabled veteran living in Mexico without the assistance of counsel. <u>Id.</u> at 12.

The Court finds—considering the circumstances in this case—that Ocon has demonstrated sound reasons for his delay in attacking his conviction. See <u>Chico</u>, 703 F. App'x at

11

294; cf. Blanton, 94 F.3d at 231–32 (concluding in a discussion of the application of the laches doctrine to a coram nobis petition that "[t]hree years was not an unduly long delay; it was a reasonable amount of time for Blanton to obtain new counsel and file suit."). Specifically, the Court finds the combination of the following factors provide sound reasons for Ocon's delay in filing his petition: (1) Supreme Court's lack of clarity on whether Davis would apply retroactively; (2) the Fifth Circuit's 2020 Carreon decision vacating an § 924(c) conviction predicated on a federal kidnapping; and (3) Ocon's documented disabilities, place of residence outside the United States, and lack of legal resources to assist him. Indeed, these extraordinary circumstances stood in Ocon's way and delayed him in filing his petition. As a result, the Court also finds that Ocon has met the third prong of the Foont test. See Foont, 93 F.3d at 78–79.

### B. Laches

The Government contends Ocon "is barred by the doctrine of laches." Mot. to Dismiss 1, ECF No. 5. It maintains not only has Ocon failed to state a sound reason for his delay but also he will unduly prejudice the Government if he is allowed to proceed:

> The case has been long closed, the government does not know if the records can be located. When the government charged Ocon with using, carrying and brandishing a firearm during and in relation to, and possessing and brandishing a firearm in furtherance of a crime of violence, namely: kidnapping, in violation of 18 U.S.C. § 924(c)(1)(A)(i) & (ii), and Ocon pleaded guilty to this charge, the Government gave up the right to charge and seek a plea for using, carrying and brandishing a firearm during and in relation to, and possessing and brandishing a firearm in furtherance of a drug trafficking crime, namely: possession with the intent to distribute a quantity of marijuana, in violation of 18 U.S.C. § 924(c)(1)(A)(i) & (ii). The government would further be prejudiced because the statute of limitations has passed. See Cortes–Mendoza v. United States, 5:16-MC-017, 2016 WL 9663265, at *1 (S.D. Tex. June 13, 2016), aff'd, 694 F. App'x 295 (5th Cir. 2017).

Id. at 8.

"To establish that [a] cause of action is barred by laches the government must show the

occurrence of (1) a delay (2) that was not excusable (3) which caused the government undue prejudice." Clymore v. United States, 217 F.3d 370, 376 (5th Cir. 2000), as corrected on reh'g (Aug. 24, 2000). Additionally, "[i]n order to prevail on a laches claim [the government] must make a particularized showing of prejudice." Paprskar v. Estelle, 612 F.2d 1003, 1007–08 (5th Cir. 1980). "If the [government] makes a prima facie showing that it has been prejudiced as a result of the petitioner's delay, the burden shifts to the petitioner to show either that the [government] actually is not prejudiced or that petitioner's delay 'is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.'" McDonnell v. Estelle, 666 F.2d 246, 251 (5th Cir. 1982) (quoting former Rule 9(a), 28 U.S.C. foll. § 2254).

Ocon observes he "was indicted in 2006, and many of the pertinent records are available online." Pet'r's Resp. 16, ECF No. 12. He adds, "[m]ore importantly, the government does not show the particular relevance of any purportedly missing records in Mr. Ocon's 2006 case." Id. He further notes "it would make no difference whether Mr. Ocon sought relief immediately after the Davis decision in 2019—the statute of limitations had already long-since expired." Id.

Laches may apply to coram nobis proceedings, but the Fifth Circuit did not vacate a § 924(c) conviction predicated on federal kidnapping until 2020. Carreon, 803 F. App'x at 791. Ocon's sixteen-month delay after Carreon in filing his petition was reasonable—considering he was a disabled veteran living in Mexico and proceeding without the assistance of counsel. Blanton, 94 F.3d at 231–32.

Moreover, the Government recommended Ocon's below-the-guidelines sentence after it considered all his criminal conduct. It released Ocon from its custody after he discharged his

sentence. It has not met its prima facie showing of "particularized" prejudice. Paprskar, 612 F.2d at 1007–08. It has not met its burden of showing that granting Ocon relief now would cause it undue prejudice.

The Court finds Ocon's claim is not barred by the doctrine of laches.

### C. Continuing Civil Disability

The Government avers Ocon "has not shown a continuing civil disability because of his conviction." Mot. to Dismiss 1, ECF No. 5. Specifically, the Government argues "[h]e has not shown that he has been denied naturalization or shown any other continuing civil disability." Id. at 9.

Ocon responds "[h]is civil disabilities stem from the ongoing immigration consequences he faces as a result of his Section 924(c) conviction." Pet'r's Resp. 17, ECF No. 12. He notes "[h]e was deported in 2016. USCIS denied his 2016 naturalization application solely because of his conviction for an aggravated felony, and his 2021 naturalization application faces the same obstacle." Id.

To obtain coram nobis relief, a petitioner must show his "allegedly wrongful conviction actually results in an ongoing civil disability." Blanton, 94 F.3d at 233. Specifically, a petitioner must show "(1) the disability [is] causing a present harm; (2) the disability [arises] out of the erroneous sentence; and (3) the potential harm to the petitioner [is] more than incidental." United States v. Sloan, 505 F.3d 685, 697 (7th Cir. 2007).

In Fiswick v. United States, 329 U.S. 211 (1946), the Supreme Court held an alien who had served his sentence could still challenge his conviction because his conviction had a continuing effect on his ability to seek naturalized citizenship. The Supreme Court explained:

> [O]ther disabilities or burdens may flow from the judgment, improperly obtained, if we dismiss this case as moot and let the conviction stand. If [petitioner] seeks naturalization, he must establish that during the five years immediately preceding the date of filing his petition for naturalization he has been and still is a person of good moral character. An outstanding judgment of conviction for this crime stands as ominous proof that he did what was charged and puts beyond his reach any showing of ameliorating circumstances or explanatory matter that might remove part or all of the curse. And even though he succeeded in being naturalized, he would, unless pardoned, carry through life the disability of a felon; and by reason of that fact he might lose certain civil rights. Thus [petitioner] has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him. In no practical sense, therefore, can [petitioner's] case be said to be moot.

Id. at 220–22 (internal citations and quotations omitted). Although the petitioner in Fiswick did not seek a writ of coram nobis, the Supreme Court later cited Fiswick as authority for extending the writ of coram nobis to petitioners who had already served a sentence but suffered ongoing collateral consequences. Morgan, 346 U.S. at 513, n.27.

Ocon's disability—arising from his § 924(c) conviction—is causing a present harm. Ocon lives outside the United States because of his deportation in part due of his § 924(c) conviction. Pet'r's Resp. 18, ECF No. 12; see also United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004) ("Deportation is such a collateral consequence."). The subsequent denial of his naturalization application and inability to reenter the United States legally are continuing "collateral consequence[s]" of his § 924(c) conviction. Fiswick, 329 U.S. at 221–22 His application for a military naturalization was denied because his "aggravated felony" made him "permanently ineligible for naturalization." Id. at 5. He "may" in the future be "ineligible for visas or admission into the United States to visit his family in his hometown on this basis." Id. at 18. Ocon's disability arises in part out of an erroneous sentence imposed after he pleaded guilty to a violation of § 924(c). Davis makes clear that Ocon was indicted and convicted for conduct

15

which is not a federal offense. Finally, the potential harm to Ocon is more than incidental. Consequently, Ocon's challenged error is of sufficient magnitude to justify the extraordinary relief. Accordingly, Ocon must be absolved of the consequences flowing from his § 924(c) conviction. Marcello, 876 F.2d at 1154.

The Court finds that Ocon has shown a continuing civil disability—specifically the ongoing immigration consequences because of his conviction for brandishing a firearm in furtherance of a crime of violence, namely kidnapping, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), and (ii) (Count Four)—of sufficient magnitude to justify the extraordinary relief through a writ of coram nobis. Thus, the Court further finds that Ocon meets the fourth prong of the Foont test. See Foont, 93 F.3d at 78–79. The Court also finds the vacatur of Ocon's conviction will eliminate the cause of this significant collateral consequence.

## CONCLUSIONS AND ORDERS

The Court concludes that the Government has <u>not</u> shown Ocon "failed to state a sound reason for his failure to seek relief earlier, he is barred by the doctrine of laches, and he has not shown a continuing civil disability because of his conviction." It further concludes that Ocon has shown sound reasons for his delay in bringing this action and a continuing civil disability because of his conviction. Consequently, the Court also concludes that it should deny the Government's motion to dismiss—and grant Ocon's petition for the extraordinary remedy of a writ of audita querela or a writ of coram nobis. The Court, therefore, enters the following orders:

**IT IS ORDERED** that the Government's motion to dismiss (ECF No. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that Ocon's petition for a writ of audita querela or a writ of coram nobis under the All Writs Act (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** and that Ocon's conviction for using, carrying, and brandishing a firearm during and in relation to, and possessing and brandishing a firearm in furtherance of a crime of violence, namely kidnapping, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), and (ii) (Count Four) in cause number EP-06-CR-1078-DB-2 in the United States District Court for the Western District of Texas is **VACATED**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this _31st_ day of March 2022.

_____
DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE